JUNE TERM, 1864. 257

Cramer vs. The City of Milwaukee et al.

## CRAMER vs. THE CITY OF MILWAUKEE and others.

The laws of this state relative to the assessment and collection of taxes, which were in force in 1861, authorized town and city boards of equalization to equalize the assessment of *personal property* within their respective localities.

Sec. 22, ch. 167, Laws of 1859, empowered town and city boards of equalization to equalize the valuation of *real* property; sec. 47 of the same chapter provided a different board for the equalization of personal property. The first section of ch. 295, Laws of 1860, contains the following provisions: the 6th clause adds to said sec. 22 a provision "that said town and city boards of equalization shall annually equalize the value of * * * personal property," &c.: the 11th clause provides for striking out the *whole* of said section 22, and inserting in lieu thereof certain provisions, all of which relate to the equalization of *real* property by town, city or village boards; and the 23d clause repeals entirely sec. 47 above mentioned. *Held,* that the provision added to said sec. 22 by the 6th clause was not repealed by the 11th clause, but remained in force.

The power of such board of equalization, under the statute, is not limited to equalizing the valuation of specific articles of property, returned as belonging to one person, as compared with the valuation of like property belonging to other persons; but where the board is satisfied that the aggregate amount of money (or other specified kind of personal property) assessed to any person is greater or less than that upon which he should pay a tax, it is its duty to correct that error.

If a person liable to taxation in any tax district refuses to furnish a statement of his personal property, when duly demanded by the assessor, he cannot complain if the assessor and the board of equalization, in making the valuation, act upon gross amounts instead of specific items.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was brought to restrain the defendants from enforcing the collection of a tax upon the personal property of the plaintiff, which tax is alleged to have been unjustly and illegally assessed. It appears that the plaintiff was served by the assessor with a notice to furnish the usual statement of his personal property liable to taxation; but neglected to do so; that the assessor made a return assessing his personal property in gross at $4000, but not stating the specific items of which the same consisted; that the board of equalization of said city raised the valuation to $15,000; and that a warrant had been issued for the collection of a tax upon that amount from him. The county court granted an injunction according to the prayer of the complaint; and the defendants appealed.

*J. G. Jenkins*, for appellants:

To the point that subd. 6, sec. 1, ch. 295, Laws of 1860, was not repealed by subd. 11 of the same section, *Mr. Jenkins* cited *McCartee v. Orphan Asylum Society*, 9 Cow., 437 ; *Mayor &c. of N. Y. v. Walker*, 4 E. D. Smith, 258 ; *Bowen v. Lease*, 5 Hill, 221 ; *People v. Deming*, 1 Hilton, 271; *Fullerton v. Spring*, 3 Wis., 667; *Wright v. Oakley*, 5 Met., 404 ; *Hayes v. Symonds*, 9 Barb., 260. To the point that the action of the board of assessors was conclusive, however erroneous, he cited *Weaver v. Devendorf*, 3 Denio, 117 ; *Albany and West Stockbridge R. R. Co. v. Town of Canaan*, 16 Barb., 245 ; *Osborn v. Danvers*, 6 Pick., 98. Could it be impeached even for fraud ? *Stokes v. Knarr*, 11 Wis., 389.

*H. F. Prentiss*, for respondent, contended that subd. 6, sec. 1, ch. 295, Laws of 1860, when adopted, became a part of sec. 22, ch. 167, Laws of 1859, which it professed to amend ; and when said section 22 was "stricken out" by the subd. 11 of said sec. 1, and another section inserted in lieu thereof, which did not authorize the town and city boards of equalization to equalize the assessment of personal property, there remained no law giving them that power. This 11th subdivision is directly in conflict with subd. 6, and, being the later clause, must stand in preference to the former. Again, in subd. 11 the board is described as a board " to equalize the assessment of *real* property" simply ; and it is provided that each member of it shall take an oath fairly and impartially to equalize the valuation of said *real* property. 2. But if the board possesses authority to equalize the valuation of personal property, it must still have before it some description or specification of articles of property, with the assessed value thereof, so that it may pass its judgment upon the justice and equity of that valuation as compared with other valuations of like property within its jurisdiction. It is in this way that such boards proceed in equalizing *real* property. 3. If the power claimed for the board in this case exists, it applies not only to cases where the owner of

the property neglects or refuses to give a statement of it, but to all cases. A man, therefore, may swear to the value of his property, and this board, without the responsibility of an oath, and without any examination, may arbitrarily raise that valuation to any amount, and that amount "shall be deemed the true valuation thereof, and shall be so returned by the assessor." And yet the assessor, in making his return to the clerk of the county board of supervisors, is to make oath (sec. 41) "that the value of the personal property of which statements have been made and attested by the oaths of persons required to list the same, is truly returned *as set forth in such statements.*"

*By the Court,* COLE, J. In *Van Cott v. Supervisors of Milwaukee County,* decided at the present term [ante, p. 247,] we held that a court of equity would not interfere to restrain the collection of a tax illegally or improperly assessed upon personal property, for reasons given by the chief justice in that case. In this case the defendants do not seem to have relied on the question of jurisdiction; for although they demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, yet they afterwards answered and went to trial on the merits. This being the state of the record, we shall pass by all questions of practice, if any exist, and consider the question whether it appears that a tax was illegally assessed upon the personal property of the respondent.

The first objection taken is, that there was no law in force in this state in 1861 authorizing the town or city boards of equalization to equalize the assessment of personal property. There is certainly no little plausibility in this view of the subject, when we consider the very confused manner in which the legislature has enacted and amended our revenue laws; but we still think it is incorrect. By the 22d section of chapter 167, Laws of 1859, ample provision is made for the equalization of the value of real estate by the boards of equalization of

the different towns or cities; while the 47th section provides for a different board of equalization of personal property. In the 6th clause of sec. 1, chap. 295, Laws of 1860, (being an act to amend the law of 1859 just cited,) it was, among other things, enacted as follows: "Also add to the end of section 22 the following: 'and it is hereby provided that the said town and city boards of equalization shall annually equalize the assessment of new entries, new structures and personal property, and such equalized value shall be deemed the true value thereof, and shall be so returned by the assessor.'" The effect of this amendment was to confer upon the town and city boards of equalization the same power to equalize personal property which was vested in the county board of equalization by section 47 of the law of 1859; while the 23d clause of section 1, law of 1860, repealed section 47 entirely. But the whole uncertainty and difficulty of these various enactments grow out of the 11th clause of the 1st section of the amendatory act , which reads as follows: "Strike out the whole of section 22, and insert in lieu thereof he following:" then proceeding to re-enact the same section, without any material change, as it originally stood in the act of 1859. Now it is said, as the amendatory part of the 6th clause before cited became a part of and was really incorporated into section 22, when that section was afterwards repealed and stricken out the amendatory provision fell from necessity with the other part of the section. It is however to be observed that the amendment, repeal and re-enactment of section 22 were made by different clauses of the same section, and must be held, we suppose, to have gone into operation simultaneously. There could not then be said to have been any instant of time between the taking effect of the amendment and its entire repeal with the original section. If there was not, how can it be shown that the amendment became incorporated into and became a part of that section before the same was repealed?

W think the practical operation and effect of this legislation

JUNE TERM, 1864.                    261

Cramer vs. The City of Milwaukee et al.

rather was a re-enactment of the old law as amended and modified by the 6th and 11th clauses of the law of 1860. We can hardly believe the legislature intended to repeal the section providing for a county board of equalization of personal property, while conferring this power upon the town and city boards of equalization, and then in the same breath repeal the whole law upon that subject. In order therefore to avoid giving these various provisions an effect not contemplated by the legislature, we must hold that there was no unqualified repeal of section 22 after it had been amended, but rather that it was re-enacted and modified by the provisions in the new law. The power, then, to equalize the value of personal property would be conferred on the equalizing boards mentioned in the 11th clause of the section. And that such was the design and purpose of the legislature we cannot doubt, however bunglingly they may have proceeded in the accomplishment of their object.

Another objection taken is, that the equalizing board had no right to arbitrarily raise the respondent's assessment of personal property as made by the assessor, because the latter made no return of any specific articles of property. The respondent neglected to furnish a statement of his personal property as required by law. The assessor assessed him a gross amount of $4,000, which the equalizing board raised to $15,000. It is insisted that the assessor should return a list of specific articles with his valuation, and that the duty and power of the board extends only to equalizing these values as compared with other valuations of like property. But we think the board has a more enlarged power and duty over this matter, and that it can correct the errors of judgment, frauds or mistakes of the assessor. And whenever the board is satisfied that the aggregate amount of money, for instance, assessed to a person is greater or less than the amount upon which he should pay a tax, the error should be corrected. And surely if a party refuses to furnish a statement of his

personal property, he cannot complain if the assessor and board of equalization act upon gross amounts instead of specific items.

We think this disposes of all the questions in this case material to be considered.

The judgment of the county court is reversed, and the cause remanded with directions to dismiss the complaint.